IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

  Plaintiff,

vs.                     No. CR 09-2964 JB

PAUL D. RAINBIRD, and
JUNE L. ORTIZ,

  Defendants.

**MEMORANDUM OPINION AND ORDER**

  **THIS MATTER** comes before the Court on the Sentencing Memorandum for Defendant June L. Ortiz, filed July 6, 2011 (Doc. 103)("Sentencing Memorandum"). The Court held a sentencing hearing on August 12, 2011. The primary issues are: (i) whether the Court should sentence Defendant June L. Ortiz to probation; and (ii) whether the Court should accept the parties' agreement that Ortiz must pay $10,000.00 in restitution to the New Mexico Taxation and Revenue Department ("NMTRD"). Because the Court concludes that the circumstances of Ortiz' offenses and her personal circumstances justify a sentence of probation, the Court will sentence her to 3-years probation. Because the Plaintiff United States of America and Ortiz have stipulated to an amount of $10,000.00 in restitution to the NMTRD, the Court will accept that stipulation and order Ortiz to pay $10,000.00 in restitution to the NMTRD.

**FACTUAL BACKGROUND**

  Ortiz was born in Santa Fe, New Mexico. See Presentence Investigation Report ¶ 52, at 16, disclosed June 14, 2011 ("PSR"). She is active in her church, is involved in church youth groups, and teaches catechism. See PSR ¶ 54, at 16. When she was eighteen, she moved to Las Cruces, New Mexico to attend New Mexico State University. See PSR ¶ 56, at 16. At age twenty, she

moved to Albuquerque. See PSR ¶ 56, at 16. She attended the University of New Mexico in Albuquerque from 1992 to 1993. See PSR ¶ 64, at 18. She then attended Central New Mexico University, formerly called TVI, in Albuquerque from 1994 to 2001. See PSR ¶ 64, at 18. In December 2002, she returned to the University of New Mexico and earned a bachelors degree in Business Administration. See PSR ¶ 64, at 18. "She completed three years of master level courses at the University of New Mexico, Anderson School of Management." PSR ¶ 64, at 18. She never completed the program and last attended school in the summer of 2003. See PSR ¶ 64, at 18.

Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") agents began investigating Ortiz and her co-Defendant Paul D. Rainbird for failure to comply with certain laws regarding the sale of cigarettes and cigarette taxes. See PSR ¶¶ 9-12, at 6-7. Businesses in the State of New Mexico that sell cigarettes must affix a New Mexico tax-paid stamp on every pack of cigarettes, "at a cost of $.91 (now $1.60) per pack of twenty cigarettes." PSR ¶ 10, at 6. An exception to this requirement exists for "duly licensed" Native Americans who obtain cigarettes "for sale or use on the reservation in which they are an enrolled tribal member." PSR ¶ 10, at 6. When a business that sells cigarettes does not comply with this law, it has a cost advantage on cigarettes over other businesses in New Mexico. See PSR ¶ 10, at 6.

Ortiz and Rainbird were involved in several businesses that sold cigarettes to out-of-state customers and to customers not on Native American reservations. See PSR ¶¶ 9, 12, at 6-7. Rainbird controlled these businesses. See PSR ¶ 9, at 6; Plea Agreement ¶ 10, at 6, filed April 8, 2011 (Doc. 91). An investigation revealed that, "from 2003 to 2008, Rainbird and Ortiz sold contraband cigarettes to approximately 6,000 out-of-state customers over the Internet without cigarette excise taxes being paid on those cigarettes and without reporting these sales to out-of-state tobacco tax administrators as required by the Jenkins Act," 15 U.S.C. §§ 375-78. PSR ¶ 12, at 6.

During this time period, "Rainbird purchased approximately 826,048 cartons of cigarettes (165,209,740 cigarettes) at a purchase price totaling approximately $18,907,120.25, with a retail value of approximately $26,141,526.08." PSR ¶ 12, at 6-7.  "On these Internet, contraband, off-Pueblo, tax-exempt cigarette sales, Rainbird realized a gross profit . . . of approximately $7,234,405.83."  PSR ¶ 12, at 7.  "This figure may be reduced downward to approximately $5,346,293.01 after costs of postage are taken into account."  PSR ¶ 12, at 7.  "The estimated tax loss to the State of New Mexico calculated during th[e] investigation was more than approximately seven million five hundred thousand dollars ($7,500,000)."  PSR ¶ 11, at 6.  Ortiz was one of two "authorized signers on the bank accounts where payments for orders through the web site" that facilitated these out-of-state sales "were deposited."  PSR ¶ 18, at 8.  On letters one of the cigarette businesses sent to retailers to facilitate tax-free purchases of cigarettes, Ortiz appeared as one of the persons to contact with questions regarding the tax-free nature of the purchase.  See PSR ¶ 20, at 8.  These letters also listed her as manager of the business.  See PSR ¶ 20, at 8.  The PSR notes that when comparing how much of the profits Rainbird received from the business to what Ortiz received, he "had a markedly disparate relationship to the funds and proceeds of the enterprise, not only in terms of salary, but also in terms of life style."  PSR ¶ 4b, at 5.

Other states and governmental entities challenged some of Rainbird's businesses' practices.  For instance, the City of New York brought a suit for Racketeer Influenced and Corrupt Organizations Act and Jenkins Act violations in City of New York v. Smokes-Spirits.Com, Inc., 541 F.3d 425 (2d Cir. 2008).  See PSR ¶ 25, at 10.  The Supreme Court of the United States ultimately heard some of the issues in that case in Hemi Group, LLC v. City of New York, 130 S.Ct. 983 (2010).  See PSR ¶ 25, at 10.  ATF agents purchased cigarettes from one of Rainbird's business as part of their investigation.  See PSR ¶ 29, at 10.  During their investigation, they also observed

through surveillance the delivery of a large number of cigarettes to one of Rainbird's businesses. See PSR ¶ 30, at 11.

## PROCEDURAL BACKGROUND

Ortiz was originally indicted on October 8, 2009. See Indictment (Doc. 1). A federal grand jury charged Rainbird and Ortiz in a fifty-nine count Indictment with the following: (i) Count 1: Conspiracy in violation of 18 U.S.C. § 371; (ii) Counts 2-9: Mail Fraud, in violation of 18 U.S.C. § 1341; (iii) Counts 10-33: Possession, Sale and Transport of Contraband Cigarettes, in violation of 18 U.S.C. § 2342(a); (iv) Counts 34-46: False Statement or Representation Regarding Cigarette Recordkeeping, in violation of 18 U.S.C. § 2342(b); (v) Counts 47-54: Engaging in Monetary Transactions Derived from Specified Unlawful Activity, in violation of 18 U.S.C. § 1957; (vi) Counts 55-59: Reports to State Tobacco Tax Administrator, in violation of 15 U.S.C. § 376; and (vii) Forfeiture in violation of 18 U.S.C. § 981(a)(1)(A) and (D), and 28 U.S.C. § 2461(a).

A Superseding Indictment was filed on December 3, 2009. See Doc. 20. The grand jury, in the fifty-eight count Superseding Indictment, charged Rainbird and Ortiz with the following: (i) Count 1: Conspiracy in violation of 18 U.S.C. § 371; (ii) Counts 2-9: Mail Fraud, in violation of 18 U.S.C. § 1341; (iii) Counts 10-32: Possession, Sale and Transport of Contraband Cigarettes, in violation of 18 U.S.C. § 2342(a); (iv) Counts 33-45: False Statement or Representation Regarding Cigarette Recordkeeping, in violation of 18 U.S.C. § 2342(b); (v) Counts 46-53: Engaging in Monetary Transactions Derived from Specified Unlawful Activity, in violation of 18 U.S.C. § 1957; (vi) Counts 54-58: Reports to State Tobacco Tax Administrator, in violation of 15 U.S.C. § 376; (vii) Forfeiture in violation of 18 U.S.C. § 981(a)(1)(A) and (D), and 28 U.S.C. § 2461(c); and (viii) Forfeiture in violation of 18 U.S.C. § 982. Before entering a guilty plea, Rainbird filed a motion to dismiss the Superseding Indictment. See Motion to Dismiss: Count 2-9, Mail Fraud;

Count 10-32, Possession, Sale and Transport of Contraband Cigarettes; Counts 33-45, False Statement or Representation Regarding Cigarette Recordkeeping; Count 46-53, Engaging in Monetary Transaction Derived from Specified Unlawful Activity; Counts 54-58, Reports to State Tobacco Tax Administrator, filed February 14, 2011 (Doc. 82).

Ortiz, pursuant to a Plea Agreement, pled guilty to Counts 54 through 58 of the Superseding Indictment, filed December 3, 2009 (Doc. 20), charging her with violations of 15 U.S.C. § 376, that being reports to state tobacco tax administrator.[1]  The parties agreed that, at the time of the charged conduct, Ortiz' conduct involved misdemeanor violations of the Jenkins Act as opposed to felony violations.  See Plea Agreement ¶ 3, at 2.  The parties recognize in the Plea Agreement that, under U.S.S.G. § 1B1.9, the sentencing guidelines do not apply to sentences for Class B or C misdemeanors.  See Plea Agreement ¶ 5, at 3.  The parties agreed that Ortiz would pay $10,000.00 in restitution to the NMTRD.  See Plea Agreement ¶ 6, at 3.  The United States agreed to recommend a sentence of probation.  See Plea Agreement ¶ 10, at 7.

The United States Probation Office ("USPO") disclosed a PSR for Ortiz on June 14, 2011. In the PSR, the USPO recognized that, pursuant to U.S.S.G. § 1B1.9, the sentencing guidelines do not apply to the offenses to which Ortiz plead guilty.  See ¶¶ 47, 50, at 15.  Consequently, the PSR did not calculate Ortiz' offense level or criminal history category.  See ¶¶ 47, 50, at 15.  The PSR did not provide commentary disagreeing with the amount of restitution to which the United States and Ortiz agreed in the Plea Agreement.  See Plea Agreement ¶¶ 45, 84, at 14, 24.  On July 1, 2011, the USPO disclosed a revised PSR to correct some statements in the PSR and to clarify some

---

[1]On August 12, 2011, the United States filed a motion to dismiss Counts 1 through 53 of the Superseding Indictment, some of which were felony counts, including mail fraud.  See Motion to Dismiss at 1 (Doc. 113).  On August 12, 2011, the Court granted that motion.  See Order at 1 (Doc. 114).

information based on Ortiz' requests, and to add additional financial information regarding the business in which Ortiz was involved.

On July 6, 2011, Ortiz filed her Sentencing Memorandum.  She asks the Court to impose a sentence of probation.  See Sentencing Memorandum at 2.  Ortiz also provides support for the parties' agreement that the Court should impose restitution in the amount of only $10,000.00.  See Sentencing Memorandum at 2.  Ortiz argues that the factors in 18 U.S.C. § 3553(a) weigh in favor of a sentence of probation.  See Sentencing Memorandum at 5.  She notes that the United States recognized in the Plea Agreement that she "is a person whose character, lifestyle, and contributions to society set her far apart from the vast majority of criminal defendants who come before the Court."  Sentencing Memorandum at 5.  She asserts that she has no prior criminal history.  See Sentencing Memorandum at 5.  She notes that she "is an active parishioner and heavily involved with her church, where she has taught catechism for several years and where she assisted in starting the church's youth program and continues to volunteer much of her time."  Sentencing Memorandum at 5.  Ortiz directs the Court to various letters that she has attached to her Sentencing Memorandum, which recognize her "service and contributions to her community," and how they have "touched many lives and made a difference to many people."  Sentencing Memorandum at 5.  Ortiz also contends that her involvement in the cigarette business implicated in this case was minor in comparison to her co-defendant, Rainbird.  See Sentencing Memorandum at 6.  She recounts that, at the time she became involved in his cigarette business, she had just graduated from the University of New Mexico.  See Sentencing Memorandum at 6.  She notes that she is twenty years younger than Rainbird.  See Sentencing Memorandum at 6.  She asks the Court to consider that she is no longer involved in the sale of cigarettes and never plans to be in the future.  See Sentencing Memorandum at 8.  Ortiz asserts that some of her conduct during the time in which she was

engaging in criminal activity suggests that she attempted to comply with the law, including that she sought out and engaged a reputable accounting firm, and met "regularly at the business offices with United States Postal Service representatives who wanted to help her grow and promote the cigarette business." Sentencing Memorandum at 8-9. She notes that, while not attempting to excuse her Jenkins Act violations, she committed them with no criminal intent and "was horrified when she learned that she may have committed a crime." Sentencing Memorandum at 9. She recognizes that she naively trusted her uncle, Rainbird. See Sentencing Memorandum at 9. She also notes that Rainbird received a much larger share of the profits from the business than she did. See Sentencing Memorandum at 9-10. With respect to the restitution amount of $10,000.00 to the NMTRD, she argues that the parties determined this amount to reflect "the practical, applicable restitution amount in this case given [her] financial resources," her financial needs given that she has a family, and her earning ability. Sentencing Memorandum at 12. She also notes that, while she did not comply with the Jenkins Act's reporting requirements, "it was the customers, not Ms. Ortiz, who owed the states the tobacco tax on those purchases." Sentencing Memorandum at 13.

On August 10, 2011, the United States filed its Response to the Sentencing Memorandum. See Response of the United States to Defendant's Sentencing Memorandum (Doc. 111)("Response"). The United States "agrees with and endorses the Defendant's sentencing requests." Response at 1. It contends that Ortiz' requests "are entirely consistent with the plea agreement," and that it "recognized and continues to recognize the character and the quality of Ms. Ortiz' life expressed not only in terms of her family life, but also in terms of her relationship with her church and her community." Response at 1. The United States recognizes that, under the circumstances, Rainbird most likely misled Ortiz regarding the circumstances of the business and that she most likely reasonably relied upon him. See Response at 2. The United States also notes

that her role in the operation was much less significant than the role Rainbird played. See Response at 2. The United States took issue, however, with Ortiz' contention that the NMTRD is not a victim of her Jenkins Act offenses. See Response at 2.

At the sentencing hearing on August 12, 2011, Ortiz noted that the parties are in the rare situation where they agree on what should happen in the case. See Transcript of Hearing at 3:14-17 (taken August 12, 2011)(Sanchez)("Tr.").[2] Ortiz reiterated that she misplaced her trust in Rainbird. See Tr. at 4:12-24 (Sanchez). She noted that Jenkins Act violations are a strict liability offense. See Tr. at 6:4-7 (Sanchez). She emphasized that Rainbird told her that the Jenkins Act did not apply to a Native American owned business. See Tr. at 6:13-15 (Sanchez). The Court expressed some concern about the reaction Ortiz' husband had to some of the government charges and that he may have blamed the United States for Ortiz' situation. See Tr. at 8:21-9:9 (Court, Sanchez).[3] Ortiz stated that she believes that everyone, including her family, is pleased with the Plea Agreement, appreciates how the United States has cooperated with Ortiz, and has tried to understand the nature of her involvement in the case. See Tr. at 10:5-11 (Sanchez). She emphasized that this experience has been a long journey for herself and her family. See Tr. at 12:16-13:6 (Ortiz). The Court

---

[2]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

[3]The paragraph in the PSR that prompted this inquiry provides:

> According to the defendant's husband, he is very supportive of the defendant. He did indicate he wished the government would have handled the situation better. He admitted the situation has been stressful to him and the marriage. He also advised it has been stressful financially. Mr. Ortiz described the defendant as a good person. He said she is kind, loving and a good friend. He indicated she is a good wife, good mom and very faithful person.

PSR ¶ 55, at 16.

questioned whether someone receiving five misdemeanors for $7.5 million in fraud should receive a sentence of probation. See Tr. at 15:2-9 (Court). The Court also expressed concern whether someone with the equivalent of an MBA should return to work in the business community when that person was either smart enough to become involved in this criminal activity or stupid enough not to comprehend the situation. See Tr. at 15:6-9 (Court). The United States noted that it originally had considerable pause in making such a recommendation based on the nature of the case, but noted that the Jenkins Act is somewhat obscure and not necessarily understood even by many lawyers. See Tr. at 15:21-16:7 (Spiers). The United States also emphasized that Rainbird had a much different relationship to the proceeds from the misconduct compared to Ortiz. See Tr. at 21:9-11 (Spiers). The United States noted that Rainbird had made trips all over the western hemisphere and had incurred approximately $560,000.00 in personal lifestyle expenses on his American Express credit card. See Tr. at 21:11-19 (Spiers). The United States also stated that Ortiz had asked Rainbird for advice on how to deal with notices that the businesses had received about complying with the Jenkins Act, because she was anxious and concerned about the notices. See Tr. at 22:11-13 (Spiers). The United States contended that, based on some notations Rainbird had marked on these notices, it viewed him as trying to make her the responsible person for this misconduct if a government prosecution ever occurred. See Tr. at 22:13-22 (Spiers). The United States pointed out that Rainbird has pled guilty to two felonies and five misdemeanors. See Tr. at 23:9-15 (Spiers). The Court noted that, while it was not prejudging Rainbird's case, it could justify Ortiz' lenient sentence in part because Rainbird would not likely receive a sentence similar to Ortiz'. See Tr. at 23:2-8 (Court). The United States asserted that it had never been its position throughout the duration of the case that Ortiz should receive incarceration. See Tr. at 24:14-18 (Spiers). Ortiz also noted that this position working for Rainbird was her first management position in a business. See Tr. at

27:7-13 (Sanchez).

## **LAW REGARDING THE JENKINS ACT**

15 U.S.C. § 376 provides:

(a)  Contents. Any person who sells, transfers, or ships for profit cigarettes or smokeless tobacco in interstate commerce, whereby such cigarettes or smokeless tobacco are shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco or who advertises or offers cigarettes or smokeless tobacco for such sale, transfer, or shipment, shall --

 (1)  first file with the Attorney General of the United States and with the tobacco tax administrators of the State and place into which such shipment is made or in which such advertisement or offer is disseminated a statement setting forth his name and trade name (if any), and the address of his principal place of business and of any other place of business, as well as telephone numbers for each place of business, a principal electronic mail address, any website addresses, and the name, address, and telephone number of an agent in the State authorized to accept service on behalf of the person;

 (2)  not later than the 10th day of each calendar month, file with the tobacco tax administrator of the State into which such shipment is made, a memorandum or a copy of the invoice covering each and every shipment of cigarettes or smokeless tobacco made during the previous calendar month into such State; the memorandum or invoice in each case to include the name and address of the person to whom the shipment was made, the brand, the quantity thereof, and the name, address, and phone number of the person delivering the shipment to the recipient on behalf of the delivery seller, with all invoice or memoranda information relating to specific customers to be organized by city or town and by zip code; and

 (3)  with respect to each memorandum or invoice filed with a State under paragraph (2), also file copies of the memorandum or invoice with the tobacco tax administrators and chief law enforcement officers of the local governments and Indian tribes operating within the borders of the State that apply their own local or tribal taxes on cigarettes or smokeless tobacco.

15 U.S.C. § 376.  Before March 31, 2010, violations of this provision were misdemeanors.  See Act

of Oct. 19, 1949, ch. 699, § 3, 63 Stat. 884, 885 (codified as amended at 15 U.S.C. § 375-

78)("Whoever violates the provisions of this Act shall be guilty of a misdemeanor and shall be fined not more than $1,000 or imprisoned not more than six months or both"). On March 31, 2010, Congress amended the Jenkins Act, making violations of this act a felony. See Prevent All Cigarette Trafficking Act of 2009, Pub. L. No. 111-154, § 2(d), 124 Stat. 1087, 1100 (2010)(codified at 15 U.S.C. § 377). See 15 U.S.C. § 377 ("Except as provided in paragraph (2), whoever knowingly violates this Act shall be imprisoned for not more than 3 years, fined under title 18, United States Code, or both.").

### LAW REGARDING U.S.S.G. § 1B1.9

U.S.S.G. § 1B1.9 provides: "The sentencing guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction." U.S.S.G. § 1B1.9. Application note 1 to U.S.S.G. § 1B1.9 provides: "Notwithstanding any other provision of the guidelines, the court may impose any sentence authorized by statute for each count that is a Class B or C misdemeanor or an infraction." U.S.S.G. § 1B1.9 cmt. n.1. U.S.S.G. § 1B1.9 defines a Class B misdemeanor as "any offense for which the maximum authorized term of imprisonment is more than thirty days but not more than six months." U.S.S.G. § 1B1.9 cmt. n.1. In determining whether to impose a term of probation, and in determining the length and conditions of probation, a court "shall consider the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3562(a).

### LAW REGARDING 18 U.S.C. § 3663

18 U.S.C. § 3663 authorizes a district court to require a defendant to pay restitution to victims under some circumstances. See 18 U.S.C. § 3663(a). 18 U.S.C. § 3663(a)(1) sets out certain offenses for which a district court may require restitution to a victim. See 18 U.S.C. § 3663(a)(1). 18 U.S.C. § 3663(a)(3) provides that a district court "may also order restitution in any criminal case

to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3). This provision authorizes a sentencing judge to award restitution in an amount greater than the loss relating to the offense of conviction. See United States v. Schrimsher, 58 F.3d 608, 610 (11th Cir. 1995)("We join these circuits and hold that [18 U.S.C. § 3663(a)(3)] gives the sentencing judge discretion to order restitution in an amount greater than the loss relating to the offense of conviction when the parties have assented to such restitution in a plea agreement."). "Under 3663(a)(3)," a "district court can only order restitution to the extent agreed upon in the plea agreement." United States v. Guthrie, 64 F.3d 1510, 1515 (10th Cir. 1995). If the defendant does not stipulate to an amount of restitution to be paid under the plea agreement, a district court must "determine the appropriate amount in accordance with the provisions of 18 U.S.C. § 3664." United States v. Guthrie, 64 F.3d at 1515. "Appellate review of the legality of a restitution award is de novo, while the amount of restitution is reviewed for an abuse of discretion." United States v. Diamond, 969 F.2d 961, 965 (10th Cir. 1992).

## ANALYSIS

The Court finds that a sentence of probation is appropriate for Ortiz' offense. The Court concludes that there are sufficient mitigating circumstances to justify a sentence of probation. The Court finds that the offenses of conviction are Class B misdemeanors and that the guidelines do not apply to these offenses. The Court also finds that restitution of $10,000.00 to the NMTRD is appropriate given that both parties have stipulated to this amount under 18 U.S.C. § 3663(a)(3).

### I. THE COURT WILL SENTENCE ORTIZ TO PROBATION.

The Court concludes that the sentencing guidelines do not apply to Ortiz' offenses, because the offenses to which she has pled guilty are Class B misdemeanors. U.S.S.G. § 1B1.9 provides: "The sentencing guidelines do not apply to any count of conviction that is a Class B or C

misdemeanor or an infraction." U.S.S.G. § 1B1.9. Ortiz pled guilty to violations of 15 U.S.C. § 376. Before March 31, 2010, violations of this provision were Class B misdemeanors. See Act of Oct. 19, 1949, ch. 699, § 3, 63 Stat. 884, 885 ("Whoever violates the provisions of this Act shall be guilty of a misdemeanor and shall be fined not more than $1,000 or imprisoned not more than six months or both"). Ortiz was originally indicted on October 8, 2009. See Doc. 1. The Superseding Indictment was filed on December 3, 2009. See Doc. 20. Both of these dates predate March 31, 2010, when these statutory amendments made violations of 15 U.S.C. § 376 a felony. A sentence of not more than six months, which was the statutory maximum under the version of 15 U.S.C. § 376 in effect at the time Ortiz was indicted, qualifies as a Class B misdemeanor as U.S.S.G. § 1B1.9 defines that term. See U.S.S.G. § 1B1.9 cmt. n.1 (defining a Class B misdemeanor as "any offense for which the maximum authorized term of imprisonment is more than thirty days but not more than six months").

In determining whether to impose a term of probation, and in determining the length and conditions of probation, the Court "shall consider the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3562(a). The Court notes that Ortiz failed to make reports as required under the Jenkins Act to New Mexico tax administrators. The Court has carefully considered the parties' arguments and the circumstances of this case. The Court has considered the guidelines courts normally use in felony cases and the Jenkins Act in arriving at its sentence, but has also taken into account other sentencing goals. The Court has considered the statutory maximum for the applicable category of offense committed by the applicable category of defendant. The Court agrees with the parties that a sentence of probation is sufficient to reflect the seriousness of her offenses.

The parties agree that Rainbird was the more culpable party in the operation of these

cigarette businesses. While Ortiz' ignorance would not qualify as a defense to prosecution for a Jenkins Act violation, her scienter nonetheless influences the Court's sentencing decision. The United States and Ortiz have both characterized Ortiz' involvement in this cigarette business as minor compared to Rainbird's. While Ortiz ultimately faced criminal charges because she was not sufficiently aware of the consequences of some of her actions, it appears that her reliance on Rainbird was to some extent justified, given that: (i) he was significantly older than Ortiz; (ii) he was her uncle; and (iii) he was a prominent member of the Native American community in which they both lived. The small amount of profits she received in comparison to Rainbird supports her contentions. Additionally, Ortiz appears to have had a highly positive impact on her community throughout her life. Ortiz is actively involved in her church. The letters the Court has received in support of Ortiz indicate that she has affected many people's lives in a positive way through her community involvement. There also appears to be a low risk of recidivism. Ortiz no longer appears to be involved in the sale of cigarettes and represents that she never plans to be in the future. She has no criminal history, unlike many defendants who appear before the Court. Likewise, some of her criminal behavior in this case appears to have been the result of a mistake as opposed to a conscious decision to engage in criminal behavior. On the other hand, given the magnitude of the fraud, the criminal activity, and the loss of revenue to the States, the Court is concerned about giving Ortiz probation. The Court is concerned that she is either a clever criminal who has convinced everyone that she is really a good person, or that she is not smart enough to be in business. The Court is particularly concerned about putting her on probation, letter her return to the business community with only a misdemeanor, and then her earning an MBA, which might create the risk of her committing more crimes. Nevertheless, in the end, the Court agrees with the United States' recommendation of probation. The Court is persuaded, at least in part, by the United States'

assertions that Rainbird played a more significant role in the criminal enterprise and will face a more significant sentence. That Rainbird has pled guilty to two felonies supports the United States' assertions.

The Court has considered the statutory maximum and the guidelines that apply in felony cases, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals. Given that the Jenkins Act is a relatively complex and obscure statutory scheme, and that Ortiz does not appear to be particularly culpable, a sentence of probation adequately reflects the seriousness of Ortiz' misdemeanor offenses. If an observer considered all of the counts in the Superseding Indictment, as the Court has tried to do, a sentence of probation to Ortiz would also promote respect for the law. Perhaps most important, given her minor role, the probated sentence provides just punishment. The Court does not need to incarcerate Ortiz to afford adequate deterrence to her, and given the seriousness of all of the charges against her, the case should provide adequate deterrence to anyone tempted to violate the Jenkins Act. Given that she is unlikely to violate the law in the future, the sentence is adequate to protect the public and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a). While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable. And perhaps most important in this calculation, the Court believes that this sentence for Ortiz is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat.

1987 (codified as amended in scattered sections of 18 U.S.C.). The Court sentences Ortiz to 3-years probation.

## II.  THE COURT WILL REQUIRE ORTIZ TO PAY $10,000.00 IN RESTITUTION TO THE NMTRD PURSUANT TO THE PLEA AGREEMENT.

The parties agreed that Ortiz would pay $10,000.00 in restitution to the NMTRD. See Plea Agreement ¶ 6, at 3. The PSR did not provide commentary disagreeing with the amount of restitution the United States and Ortiz agreed to in the Plea Agreement. See Plea Agreement ¶¶ 45, 84, at 14, 24. Jenkins Act violations are not one of the crimes listed in 18 U.S.C. § 3663(a)(1) for which a district court may order restitution in addition to or in lieu of other penalties authorized by law. See 18 U.S.C. § 3663(a)(1). Thus, a Court may only impose restitution for Jenkins Act violations only when the parties agree to restitution in a plea agreement. See 18 U.S.C. § 3663(a). 18 U.S.C. § 3663(a)(3) provides that a district court "may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3). "Under 3663(a)(3)," a "district court can only order restitution to the extent agreed upon in the plea agreement." United States v. Guthrie, 64 F.3d at 1515. If the defendant does not stipulate to an amount of restitution to be paid under the plea agreement, a district court must "determine the appropriate amount in accordance with the provisions of 18 U.S.C. § 3664." United States v. Guthrie, 64 F.3d at 1515.

"Under 3663(a)(3)," a "district court can only order restitution to the extent agreed upon in the plea agreement." United States v. Guthrie, 64 F.3d at 1515. Here, it is not necessary for the Court to calculate an appropriate amount of restitution, as the parties have agreed on the appropriate amount. The parties have agreed that $10,000.00 in restitution reflects "the practical, applicable restitution amount in this case given the financial resources of the Defendant and the financial needs

and earning ability of the defendant and the Defendant's dependents." Plea Agreement ¶ 6, at 3. Ortiz argued at the sentencing hearing that this amount reflected her best effort given her financial circumstances to repair and make amends for any damage she caused. See Tr. at 7:17-8:1 (Sanchez). Because the United States and Ortiz have agreed that restitution of $10,000.00 to the NMTRD is an appropriate amount, the Court must accept the stipulation and order that Ortiz pay $10,000.00 in restitution to the NMTRD.

**IT IS ORDERED** that the requests in the Sentencing Memorandum for Defendant June L. Ortiz, filed July 6, 2011 (Doc. 103), are granted. The Court will sentence Defendant June L. Ortiz to 3-years probation. The Court will order Ortiz to pay $10,000.00 in restitution to the New Mexico Taxation and Revenue Department.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Paul H. Spiers
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Sara Nathanson Sanchez
Stelzner, Winter, Warburton, Flores, Sanchez & Dawes, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendant*